STATE OF NEBRASKA, APPELLEE, V.
DONALD P. SANDERS, APPELLANT.
697 N.W.2d 657

Filed May 27, 2005.   No. S-04-581.

Dennis R. Keefe, Lancaster County Public Defender, Shawn Elliott, and Andrea Snowden for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Following a jury trial in the district court for Lancaster County, Donald P. Sanders was convicted of first degree sexual assault and procuring alcohol for a minor. Sanders was sentenced to 5 years' probation on the sexual assault conviction and 90 days in jail and a $500 fine on the alcohol conviction. Prior to trial, Sanders challenged the jury selection process in Lancaster County. The court overruled Sanders' jury selection challenge. During the course of the proceedings, Sanders unsuccessfully raised issues relating to the admission of evidence. Following trial, Sanders filed a motion for new trial, which was denied. On appeal, Sanders challenges the correctness of the jury instructions and various rulings. We affirm.

## STATEMENT OF FACTS

On September 12, 2002, the State filed an information charging Sanders with first degree sexual assault and procuring alcohol for a minor. The statute pertaining to procuring alcohol is found at Neb. Rev. Stat. § 53-180 (Reissue 2004), and the first degree sexual assault statute is found at Neb. Rev. Stat. § 28-319 (Reissue 1995). Section 28-319(1) provides as follows:

> Any person who subjects another person to sexual penetration (a) without consent of the victim, or (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct, or (c) when the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree.

The charges in this case grew out of an incident which occurred between Sanders and the alleged victim, J.F., on July 7, 2002. In the charge relating to first degree sexual assault, the State alleged in the information that Sanders did "subject [J.F.] to sexual penetration without the consent of the victim" or "knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct."

Prior to trial, Sanders filed a motion in limine requesting, inter alia, that the State be prohibited from offering evidence concerning "whether the alleged victim suffered any injuries as a result

of the commission of the alleged offense, and any opinion that said injuries are inconsistent with a consensual sexual act." In particular, Sanders objected to expected testimony by Jill Ross, a nurse who had examined J.F. after the alleged assault. Following a hearing, the trial court denied Sanders' motion to the extent it requested that Ross "not be permitted to testify about observations she made of injuries to the alleged victim" but granted the motion to the extent it sought "to prevent . . . Ross from rendering any opinion about the cause or source of the injuries."

Also prior to trial, on April 7, 2003, Sanders filed a motion entitled "Motion for a Hearing on Whether § 25-1628 is Constitutional." Neb. Rev. Stat. § 25-1628 (Reissue 1995) generally provides for the manner in which jury lists are assembled from voter registration lists and motor vehicle operator lists. At the time this motion was filed, no trial date had been set and jury selection had not begun. Trial eventually began on January 20, 2004.

In the April 7, 2003, motion, Sanders requested "a hearing to determine whether the manner in which the composition of a jury venire is determined by Neb. Rev. Stat. § 25-1628 is constitutional." Sanders, who is African-American, generally claimed that African-Americans were underrepresented on juries. In the motion, Sanders referenced The Nebraska Minority and Justice Task Force Final Report, State Justice Inst. (2003), as support for his motion. He also asserted that he had "a constitutional right to a jury which is comprised of a fair cross section of the community." Sanders requested a hearing on his motion. On April 9, the court held a hearing on various motions including Sanders' "Motion for a Hearing on Whether § 25-1628 is Constitutional." The court ordered an evidentiary hearing on the motion and set a schedule for discovery.

On April 18, 2003, Sanders filed a "Supplemental Motion to Discover," in which he requested access to (1) the current jury pool list for Lancaster County and the pool lists for 2000 through 2002; (2) practice, policies, and regulations governing the manner in which a jury pool is created for any jury convened in the district court; and (3) jury pool questionnaire forms maintained by the jury commissioner for all individuals called for jury service in 2000 through 2003. On May 21, the court ruled on the discovery motion. The court noted that Neb. Rev. Stat. § 25-1635 (Reissue

1995) made it unlawful for the jury commissioner and court officers to disclose the identity of jurors without court order and that good cause must be shown to warrant such disclosure. The court concluded that while there was good cause for disclosure of the master jury list, there was not good cause to disclose the identity of jurors in individual cases. The court reasoned that

> if there is no significant difference in the racial makeup of the Master Jury Pool compared to the racial make up of [Lancaster] county, and the methods used to select the jury venire for a particular case are random at each step, the result will satisfy the requirements of due process even though a particular jury venire, or even several jury venire [sic], may not be representative of the racial make up of the community.

The court therefore stated that before good cause could be established to disclose the identity of jurors, "there must be a showing that either the Master Jury Pool is not representative, or that one of the steps taken to select a jury venire in a particular case is not random."

On May 30, 2003, Sanders filed a motion entitled "Motion Pursuant to Neb. Rev. Stat. § 25-1637." Neb. Rev. Stat. § 25-1637 (Reissue 1995) generally provides that a party may move to stay proceedings, or quash the entire jury panel or seek other relief based on a substantial failure to comply with the statutory jury selection processes "in selecting the grand or petit jury." In the May 30 motion, Sanders again asserted that The Nebraska Minority and Justice Task Force Final Report presented a legitimate issue as to whether or not minorities are underrepresented on juries, and he therefore requested a hearing to determine whether Lancaster County's system of selecting juries violated his statutory rights.

A hearing on Sanders' jury challenges was held on October 14, 2003. Evidence at the hearing generally indicated the following regarding the jury selection process used in Lancaster County: Each year, a master jury list is prepared by the jury commissioner by electronically combining the voter registration list of Lancaster County with the drivers' license records for Lancaster County maintained by the Department of Motor Vehicles (DMV). Duplicate names are identified and eliminated. The remaining

names make up the master jury list. The race of the driver is not contained in the data communicated by the DMV to the jury commissioner, and race is not contained in voter registration records. Each juror on the master jury list is assigned a unique juror number. Thereafter, the jury commissioner, in the presence of a district judge, selects a random digit from 0 to 9, literally by drawing a piece of paper from a hat. The jury commissioner then directs the county information services division to compile a smaller list composed of those persons whose unique juror number ends in the digit selected from the hat. This list is called the annual jury list and is the group from which jurors are selected for the term year. About a month before a jury term is to begin, the jury commissioner requests from the information services division the names of approximately 700 randomly selected jurors from the annual list. Questionnaires designed to determine if the selected persons statutorily qualify for jury duty are then sent to those persons. The trial court found that 25 to 50 names are eliminated from the jury term panel due to inaccurate addresses. Others are eliminated because of specific exclusions permitted by statute. About a week prior to trial, the jury commissioner requests the information services division to again electronically randomly select the jury venire for a particular trial. The jurors selected are then ordered to appear on the first day of trial.

Following the hearing on Sanders' jury-related motions, the court on October 27, 2003, overruled Sanders' motion to declare § 25-1628 unconstitutional and his motion pursuant to § 25-1637. The court noted evidence which showed that pursuant to 2000 census data, the percentage of persons over age 18 in Lancaster County who were nonwhite was 8.5 percent. Evidence also showed that while race could not be determined for 24 percent of those on the master jury list for Lancaster County, of those who could be identified, 7.5 percent were nonwhite. Sanders' expert testified that if all the persons on the master jury list whose race could not be identified were white, the percentages would not change significantly. The court concluded that Sanders had not presented evidence that the list was not reasonably representative of the total population of Lancaster County. The court further concluded that there was no evidence to suggest anything other than random selection of jurors from the master jury list for jury trials

and that Sanders could not show any aspect of the selection process that had a racial bias. The court therefore rejected Sanders' motions, concluding that based on the evidence presented by Sanders, "the court cannot find that NEB. REV. STAT. §25-1628 is unconstitutional or that the jury commissioner has failed to follow the statutes in the preparation of the juries in this county."

Trial began on January 20, 2004. J.F. testified at trial that at the time of the incident, she was 20 years old and was a student at the University of Nebraska. J.F. worked at the same nightclub as Sanders, and J.F. thought that Sanders was the manager of the club and her supervisor. Prior to July 7, 2002, Sanders and J.F. had a friendly working relationship but not a romantic or sexual relationship. Sanders had on occasion given J.F. rides home from work because J.F. did not have a car. J.F. testified that at the time of the incident, she was not interested in having any relationship with Sanders other than the working relationship they had.

After the nightclub closed at 1 a.m. on July 7, 2002, J.F. worked with other employees cleaning and doing other typical postclosing tasks. When the work was finished, J.F. was preparing to leave with a coworker when Sanders asked her to stay so that he could teach her to tend bar. The coworker left after Sanders told him that Sanders could give J.F. a ride home. J.F. and Sanders remained in the bar talking, and Sanders showed her how to mix drinks. J.F. recalled consuming only one full drink. J.F. did not recall what happened after she finished her drink. She remembered nothing until she awoke later that morning on the floor of the bar wearing nothing other than a shirt; her pants, underwear, and shoes were off. She saw Sanders sleeping on a sofa, and he was also naked from the waist down. J.F. felt pain in her vaginal area, and because of the pain, she thought she had been sexually penetrated. She had not felt the pain prior to that morning.

J.F. got dressed and left the club. She called another employee to pick her up and take her home. J.F. also called a friend who met her at her apartment, and after J.F. told him what had happened, he called the police to report a sexual assault. The police arrived and questioned J.F. and took her to a hospital. J.F. concluded her direct testimony by stating that she had never wanted to engage in sexual intercourse with Sanders and that she did not give her consent on July 7, 2002. On cross-examination, J.F. acknowledged

that while testifying at her deposition, she had said that because she did not remember the time during which the alleged assault occurred, it was possible that she consented but that she did not think she would have.

At the hospital, J.F. was examined by Ross. Ross testified at trial regarding her training and experience as a nurse and testified that she had received specialized training as a sexual assault nurse examiner. Ross testified that in her examination of J.F., she found various abrasions, redness, and bruising in the vaginal area. Toward the end of the examination, at approximately 3 p.m., Ross took a blood specimen from J.F.

The forensic chemist who tested J.F.'s blood testified that her blood alcohol level was .10 grams per hundred milliliters. The chemist also tested J.F.'s urine and the contents of drinking glasses that had been taken from the nightclub. The chemist testified that no drugs could be found in either sample. He testified that a urine test is the best way to test for the presence of a "date rape" drug, such as "GHB" or "Rohypnol," but that no such drugs were found in J.F.'s urine sample.

Sanders unsuccessfully moved to dismiss the sexual assault charge at the end of the State's case, and he thereafter testified in his defense at trial. Sanders testified that he worked as a disk jockey at the nightclub and managed marketing for the club. Sanders testified that in the early hours of July 7, 2002, he taught J.F. how to mix various drinks. Depending on how the drinks turned out, they would either share them or throw them out. He estimated that they shared two to six drinks. Sanders admitted that he knew that J.F. was under 21. Sanders testified that J.F. appeared to be enjoying herself; that in addition to mixing drinks, he played some music and J.F. occasionally danced to the music; and that they ate some snack food. According to Sanders, between 6 and 6:30 a.m., the two ended up in a seating area of the nightclub. J.F. sat on his lap, and they talked. They began to kiss and hug, and eventually they attempted to have consensual sexual intercourse. He testified, however, that he was not fully able to penetrate J.F. because he was having difficulty maintaining an erection. They cuddled and talked for some time afterward, and when J.F. got up to use the restroom, he fell asleep on the couch. By the time he woke up, J.F. had left. On cross-examination, Sanders

admitted that he had penetrated J.F. and that such testimony was contrary to what he had originally told police investigators. He attributed his original denial to nervousness and embarrassment over being required to discuss the situation, including his inability to maintain an erection during the encounter.

Sanders moved for "directed verdict" at the close of his defense. The motion was overruled. The jury was instructed, and the case was submitted to the jury. On January 23, 2004, the jury returned verdicts finding Sanders guilty of first degree sexual assault and procuring alcohol for a minor. Sanders moved for the court to reject the verdicts as being the result of racial bias. The court took the motion under advisement and scheduled a hearing for January 27. At the hearing, the court indicated that it considered the motion to be a renewed motion to dismiss and announced that after reviewing the record, the court found no evidence of racial bias and therefore accepted the verdicts and found Sanders guilty on both counts.

Sanders filed a motion for new trial. In ruling on the motion for new trial, the court considered the issue of whether the jury instruction regarding the elements of first degree sexual assault was erroneous. The court concluded that the instruction was not erroneous and overruled Sanders' motion for new trial. The court subsequently sentenced Sanders to 5 years' probation on the first degree sexual assault conviction and to a jail sentence of 90 days and a fine of $500 on the conviction for procuring alcohol for a minor. Sanders appeals.

## ASSIGNMENTS OF ERROR

Sanders asserts that the district court erred in (1) denying him access to information regarding individuals called for jury service as part of his challenge to the jury selection process; (2) denying his challenges to the jury selection process; (3) permitting testimony by Ross when the State had not established foundation or relevance for such testimony; (4) instructing the jury to consider the "without consent" element of first degree sexual assault; (5) failing to instruct the jury that the State must prove that J.F. suffered from a "significant abnormality," such as severe intoxication, and that Sanders knew of such "abnormality"; (6) "failing to direct a verdict" in Sanders' favor at the close of the

State's case on the charge of first degree sexual assault; and (7) imposing an excessive sentence on his conviction for procuring alcohol for a minor.

## STANDARDS OF REVIEW

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Wisinski*, 268 Neb. 778, 688 N.W.2d 586 (2004).

■ Whether jury instructions given by a trial court are correct is a question of law. *State v. Al-Sayagh*, 268 Neb. 913, 689 N.W.2d 587 (2004). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *Id.*

■ In an appeal based on a claim of erroneous jury instructions, the appellant has the burden to show that the questioned instructions were prejudicial or otherwise adversely affected a substantial right of the appellant. *Wisinski, supra.*

■ Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004).

■ A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Banes*, 268 Neb. 805, 688 N.W.2d 594 (2004). An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and a just result. *Id.*

## ANALYSIS

*Jury Challenge.*

In his first two assignments of error, Sanders asserts that the district court erred in denying him access to information regarding individuals called for jury service and in ultimately denying his challenges to the jury selection process. As noted below, Sanders' challenge to the constitutionality of § 25-1628 must be deemed a facial challenge. Further, his challenge under § 25-1637 is properly limited to the manner in which the jury selection process was carried out as reflected in his case. We conclude that Sanders failed to establish any constitutional violation or any failure to follow statutes in the jury selection process and that therefore, the district court did not err in denying his challenges. We further conclude that the district court did not err in denying Sanders access to additional juror information because Sanders did not demonstrate that such information was necessary for evaluation of his challenges.

We have described a facial challenge as a "challenge to a statute, asserting that no valid application of the statute exists because it is unconstitutional on its face." *State v. Hynek*, 263 Neb. 310, 315, 640 N.W.2d 1, 6 (2002). A facial challenge is contrasted to a challenge to a statute "as applied" to the individual. See, e.g., *Van, supra*; *State v. VanAckeren*, 263 Neb. 222, 639 N.W.2d 112 (2002). At the time Sanders challenged the constitutionality of § 25-1628, no trial date had been set, and it was uncertain which master jury list would eventually be applied to his trial. The master jury list compiled pursuant to the manner prescribed in § 25-1628 had not in fact been applied to Sanders, and therefore, the proper consideration of Sanders' motion challenging the constitutionality of § 25-1628 is limited to a facial challenge.

Regarding Sanders' facial challenge to the constitutionality of § 25-1628, we note that this court has previously rejected a challenge to § 25-1628 and the general statutory scheme for jury selection. *State v. Garza*, 241 Neb. 934, 492 N.W.2d 32 (1992). *Garza* involved the statute under review pursuant to which voter registration and licensed driver lists serve as the source for the master jury list. In *Garza*, we stated that " '[i]t is difficult to conceive of a fairer or more practical method of selecting jurors than that used in Nebraska.' " 241 Neb. at 954, 492 N.W.2d at 46-47,

quoting with approval *State v. Gutierrez,* 187 Neb. 383, 191 N.W.2d 164 (1971).

■ We read Sanders' constitutional challenge to § 25-1628 as an assertion that the statute violates the fair-cross-section requirement under the Sixth Amendment. See, *Duren v. Missouri,* 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979); *Garza, supra.* In *Duren,* the U.S. Supreme Court observed that in order to establish a prima facie violation of the fair-cross-section requirement under the Sixth Amendment as to venires, a defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community, (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. The U.S. Supreme Court described "systematic exclusion" as exclusion "inherent in the particular jury-selection process utilized." 439 U.S. at 366.

*Duren* involved a constitutional challenge to venires from which juries were selected, whereas Sanders' challenge in this case is a challenge to § 25-1628 and the method of preparing master jury lists. As courts elsewhere have done, we logically extend and apply the fair-cross-section concepts of *Duren* to Sanders' challenge to the preparation of the master jury list pursuant to § 25-1628. See, similarly, *State v. Cienfuegos,* 144 Wash. 2d 222, 25 P.3d 1011 (2001) (applying *Duren* standards in challenge to master jury list); *People v. Currie,* 87 Cal App. 4th 225, 104 Cal. Rptr. 2d 430 (2001) (applying *Duren* standards and stating that Sixth Amendment rights apply at every stage of jury selection process, including compilation of master list of potential jurors and selection of venires from that list). Contrary to Sanders' claims that minorities were underrepresented, the evidence showed that minorities on the master list were fairly represented in relation to the community. In addition, the evidence presented regarding Lancaster County's procedures for calling jurors from the master jury list failed to show exclusion of minorities much less "systematic exclusion." Sanders' evidence did not show that § 25-1628 violated the fair-cross-section requirement of the Sixth Amendment or that there is "no valid application" of § 25-1628.

We conclude that the court did not err in rejecting Sanders' constitutional challenge to § 25-1628.

Sanders also asserted a challenge under § 25-1637. Section 25-1637(1) provides:

A party may move to stay the proceedings, to quash the entire panel, or for other appropriate relief on the ground of substantial failure to comply with Chapter 25, article 16, in selecting the grand or petit jury. Such motion shall be made within seven days after the moving party discovered or by the exercise of diligence could have discovered the grounds for such motion, and in any event before the petit jury is sworn to try the case.

■ By its term, § 25-1637(1) provides that a party may move for various forms of relief based on a failure to comply with chapter 25, article 16, of the Nebraska Revised Statutes, where such failure manifests itself in connection with "selecting the grand or petit jury." It is a familiar canon of statutory construction that in construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *State v. Buckman*, 267 Neb. 505, 675 N.W.2d 372 (2004). Given the presence of the phrase "in selecting the grand or petit jury," we determine that a motion brought by a party under § 25-1637(1) must be triggered by a perceived failure to comply with chapter 25, article 16, as evidenced by the selection of a particular grand or petit jury. There is no indication of the use of a grand jury in this case and the specific jury which ultimately heard this case was not yet in the process of being selected when Sanders filed his motion. As such, Sanders' motion made under § 25-1637 was premature. Therefore, we conclude that the court did not err in rejecting Sanders' challenge under § 25-1637.

Sanders also asserts that the district court erred in denying his request for discovery of additional information regarding jurors called for jury service. The district court in this case concluded that pursuant to § 25-1635, such information could not be disclosed except for good cause and that good cause had not been demonstrated. The district court did not err in these determinations.

Section 25-1635 provides as follows:

It shall be unlawful for a jury commissioner or the officer in charge of the election records, or any clerk or deputy thereof, or any person who may obtain access to any record showing the names of persons drawn to serve as grand or petit jurors to disclose to any person, except to other officers in carrying out official duties or as herein provided, the name of any person so drawn or to permit any person to examine such record or to make a list of such names, except under order of the court. The application for such an order shall be filed in the form of a motion in the office of the clerk of the district court, containing the signature and residence of the applicant or his [or her] attorney and stating all the grounds on which the request for such order is based. Such order shall not be made except for good cause shown in open court and it shall be spread upon the journal of the court. Any person violating any of the provisions of this section shall be guilty of a Class IV felony. Notwithstanding the foregoing provisions of this section, the judge or judges in any district may, in his [or her] or their discretion, provide by express order for the disclosure of the names of persons drawn from the revised key number list for actual service as grand or petit jurors.

We agree with the district court that Sanders' request for discovery in this case can be considered an application for an order requiring disclosure of potential juror names under § 25-1635. We also agree that such an order shall not be made except for good cause shown. We note for completeness that § 25-1635 elsewhere provides that "the judge or judges in any district may, in his [or her] or their discretion, provide by express order for the disclosure of the names of persons drawn from the revised key number list for actual service as grand or petit jurors." However, because Sanders requested the information pursuant to the first portion of § 25-1635, the present case is controlled by the first portion of the statute wherein good cause must be shown and not under the last portion of § 25-1635 wherein judges may provide for disclosure in their discretion.

Section 25-1628 is limited to preparation of the master jury list, and therefore Sanders' constitutional challenge to § 25-1628 was limited to preparation of the master jury list. It follows that

production of the additional information Sanders sought concerning jury selection procedures after the compilation of the master jury list was not warranted. We further note that whether or not the requested information would be relevant to a proper challenge under § 25-1637, as discussed above, Sanders' motion made under § 25-1637 was premature, and therefore good cause for discovery was not shown. We conclude that the court did not err in rejecting Sanders' request under § 25-1635 for discovery of additional information regarding jurors called for service.

*Testimony of Nurse Ross.*

Sanders asserts that the district court erred in admitting certain testimony of Ross over his objections on grounds of foundation and relevance. We determine that the court did not err in admitting Ross' testimony.

Ross was the nurse who examined J.F. on the afternoon following the alleged assault. Ross testified at trial regarding her qualifications as a nurse and her specialized training as a sexual assault nurse examiner. She also testified regarding her examination of J.F. and her observations, which included abrasions, redness, and bruising in J.F.'s vaginal area. Prior to trial, Sanders filed a motion in limine in which he sought to prevent the State from offering evidence regarding, inter alia, "whether the alleged victim suffered any injuries as a result of the commission of the alleged offense, and any opinion that said injuries are inconsistent with a consensual sexual act." Sanders asserted that Ross, whose testimony the State intended to offer, lacked sufficient qualification to render an opinion, and in addition, that such evidence was not relevant. The court granted Sanders' motion in limine to the extent it sought "to prevent . . . Ross from rendering any opinion about the cause or source of the injuries." The court denied the motion in limine to the extent it requested that Ross "not be permitted to testify about observations she made of injuries to the alleged victim."

During Ross' testimony at trial, Sanders made certain objections which the court sustained based on its previous order on the motion in limine. The court overruled other objections and allowed Ross to testify regarding her observations of injuries to J.F.'s vaginal area. Ross did not opine regarding the cause of J.F.'s injuries.

Sanders argues on appeal that none of Ross' testimony regarding injuries to J.F. should have been allowed. He argues that the only relevant purpose for such testimony was to establish the element of penetration and that because he admitted in a pretrial statement that penetration had occurred, there was no reason to introduce such evidence and that the evidence served only to inflame the jury. We do not agree.

■ The exercise of judicial discretion is implicit in determinations of relevancy under Neb. Rev. Stat. § 27-401 (Reissue 1995) and prejudice under Neb. Rev. Stat. § 27-403 (Reissue 1995), and a trial court's decision regarding them will not be reversed absent an abuse of discretion. *State v. Mowell,* 267 Neb. 83, 672 N.W.2d 389 (2003). We determine that the court did not abuse its discretion in admitting Ross' testimony.

A review of the record shows that Ross' observations regarding the injuries to J.F.'s vaginal area were relevant to the issue of whether penetration had occurred. Because Sanders' pretrial statements were indefinite as to whether penetration had occurred, when the State presented its case, it could not be certain whether Sanders would testify or, if he testified, whether Sanders would admit to penetration. The State needed to prove penetration as an element of first degree sexual assault, and Ross' testimony was relevant to that issue. Further, Ross' observations were conveyed in a professional manner without opinion and cannot be said to have been prejudicial as understood under § 27-403. We conclude that the court did not abuse its discretion in determining that Ross' testimony was relevant and allowing its admission.

*Instruction Regarding "Without Consent."*

Sanders asserts that the district court erred in instructing the jury that it could consider whether Sanders subjected J.F. to sexual penetration "without consent." Sanders claims there was insufficient evidence to support this instruction. We conclude that there was sufficient evidence to support the instruction and that the court did not err in giving the instruction.

In instruction No. 4, the court instructed the jury on the elements of first degree sexual assault as follows:

Regarding the crime of First Degree Sexual Assault, the State must prove beyond a reasonable doubt that . . . Sanders:

1. subjected [J.F.] to sexual penetration; and

2. did so on or about July 7, 2002, in Lancaster County, Nebraska; and

3. did so either:

a. without the consent of [J.F.]; or

b. at a time when . . . Sanders knew or should have known that [J.F.] was incapable of resisting or appraising the nature of . . . Sanders' conduct.

Although Sanders raised no objection to instruction No. 4 at the jury instruction conference, during the hearing on Sanders' motion for new trial, the issue of whether there was sufficient evidence to instruct on "without consent" was considered. In its order denying the motion for new trial, the court noted that on direct examination, J.F. had testified that she did not consent, but that on cross-examination, she acknowledged that she had stated at an earlier deposition that because she did not remember the actual incident, it was possible she consented, but that she did not think she would have consented. The court concluded that, considering all the evidence,

a reasonable jury could have concluded that [J.F.'s] indication that it was possible she consented was referring to the period of time that she does not remember, rather than a period of conscious recollection. *That would leave standing her statement on direct examination that she did not consent to sexual intercourse with the defendant.* Viewed in this light, there is sufficient evidence to warrant an instruction on the consent alternative.

(Emphasis supplied.)

Sanders failed to object to instruction No. 4, including the "without consent" language. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. *State v. Haltom*, 264 Neb. 976, 653 N.W.2d 232 (2002). Sanders argues that despite his failure to object to the instruction, it was plain error for the court to instruct on the "without consent" language. He argues that there was insufficient evidence to merit the instruction because J.F. conceded that she might have consented and that because J.F. did not remember the

time during which penetration occurred, she could not unequivocally testify that she had not consented.

Upon review of the record, we do not find plain error indicative of a probable miscarriage of justice in the court's giving of instruction No. 4, including the "without consent" language. As the court noted in denying the motion for new trial, J.F. testified on direct examination that she did not consent. Although on cross-examination J.F. acknowledged that in a deposition she had stated that she might have consented, such testimony did not nullify her direct testimony. Instead, the matter became an issue of J.F.'s credibility, and the jury could consider the cross-examination testimony in determining the credibility of J.F.'s direct testimony that she did not consent. Despite the cross-examination, J.F.'s direct testimony provided evidence from which the jury could have concluded that J.F. did not consent. Therefore, we conclude that the issue of consent was appropriately presented to the jury and that the court did not commit plain error by instructing on the "without consent" element.

*Failure to Instruct Jury Regarding
"Significant Abnormality."*

Sanders asserts that the court committed plain error by failing to instruct the jury that the State was required to prove as an element of first degree sexual assault that "the alleged victim suffered from a significant abnormality, such as severe intoxication or other substantial mental or physical impairment" and that "the accused had knowledge of such abnormality." We conclude that the court did not err in failing to so instruct the jury.

Referring to *State v. Rossbach*, 264 Neb. 563, 650 N.W.2d 242 (2002), Sanders argues that the court was required to give an instruction including the language quoted above. In *Rossbach*, we determined that the State had presented sufficient evidence at a preliminary hearing to bind the defendant over for trial on two counts of first degree sexual assault. In *Rossbach*, we stated that the issue in that case was "whether alleged victims of sexual assault can voluntarily intoxicate themselves so as to render themselves 'physically incapable of resisting or appraising the nature of [their] conduct' under § 28-319(1)(b)." 264 Neb. at 570, 650 N.W.2d at 248-49. We stated that "[u]nder § 28-319(1)(b), the

two-part analysis requires a significant abnormality, such as severe intoxication or other substantial mental or physical impairment, on the part of the alleged victim, and knowledge of the abnormality on the part of the alleged attacker." 264 Neb. at 572, 650 N.W.2d at 250.

Sanders argues that based on *Rossbach*, the instructions in this case were insufficient because they did not explicitly set forth that the State must prove (1) that J.F. was suffering from a severe abnormality, such as severe intoxication or other substantial mental or physical impairment, and (2) that Sanders had knowledge of such severe abnormality. In instruction No. 4, quoted above, the court used the language of the statute to instruct that Sanders could be found guilty of first degree sexual assault if he subjected J.F. to sexual penetration "at a time when . . . Sanders knew or should have known that [J.F.] was incapable of resisting or appraising the nature of . . . Sanders' conduct."

Sanders did not object to instruction No. 4 and did not request an instruction including the *Rossbach* language he now argues was required. The failure to object to instructions after they have been submitted to counsel for review or to offer more specific instructions if counsel feels the court-tendered instructions are not sufficiently specific will preclude raising an objection on appeal, unless there is a plain error indicative of a probable miscarriage of justice. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003).

We conclude that the court did not commit plain error when it instructed the jury using the language of the first degree sexual assault statute, § 28-319. We have said that in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute. *State v. Brown*, 258 Neb. 330, 603 N.W.2d 419 (1999). Although the language of *Rossbach* might be an appropriate instruction elaborating on the considerations under § 28-319(1)(b) if requested by the defendant, there is nothing in *Rossbach* that requires that its language be used in a jury instruction or which indicates that use of the statutory language would result in a miscarriage of justice. In the present case, in the absence of a request by Sanders, it was not plain error for the court to give an instruction based on the statutory language. We reject this assignment of error.

*Sufficiency of Evidence.*

Sanders asserts that the court erred in failing to "direct a verdict" on the charge of first degree sexual assault because there was insufficient evidence to support a conviction on that charge. We conclude that there was sufficient evidence to support the conviction.

We note that Sanders' assignment of error relates solely to the failure to direct a verdict in his favor on the first degree sexual assault charge "at the end of the State's case." Sanders waived his appellate right to challenge the overruling of his motion for "directed verdict" made at the close of the State's case when he presented evidence in his defense. A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict, but may challenge sufficiency of the evidence for the defendant's conviction. *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002). Despite the wording of his assignment of error, we read Sanders' argument as briefed as a challenge to the sufficiency of evidence for his conviction, and we consider the assignment of error as such.

At the close of the State's case, Sanders moved to dismiss the charge of first degree sexual assault. He argued there was insufficient evidence to support the charge because J.F. claimed to have no memory of the incident and therefore could not deny that she had consented. He also argued that there was insufficient evidence that she was "incapable of resisting" because she had testified that she had become intoxicated on previous occasions and had not experienced memory loss and because there was no evidence that she had been drugged. J.F. testified that on the night in question, she had only one drink, and Sanders argued that one drink would not have been enough to sufficiently impair her ability to resist or to appraise the situation. The court overruled the motion to dismiss, and Sanders presented evidence in his defense. At the end of all the evidence, Sanders moved for "directed verdict," and the court overruled the motion.

Sanders argues on appeal that the evidence was insufficient to support a finding that penetration occurred "without consent." However, as discussed above in connection with the jury instruction regarding "without consent," we conclude that there was sufficient evidence from which the jury could have found that J.F. did not consent and that the issue was submissible.

Sanders further argues that there was insufficient evidence to establish that J.F. was incapable of resisting or of appraising the situation and to establish that Sanders knew this to be the case. Sanders argues that evidence that J.F. had been drinking was not enough to establish that she was intoxicated. Although there was evidence that her blood alcohol level was .10 grams per hundred milliliters the afternoon following the alleged assault, Sanders argues that witnesses who interacted with her at that time did not think she appeared intoxicated. Sanders further notes that there was no evidence that J.F. had been drugged.

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004). Reviewing the evidence in this manner, we determine that there is sufficient evidence from which the jury could have found either that J.F. did not consent or that she was incapable of resisting Sanders or appraising the circumstances. Viewing J.F.'s testimony most favorably to the State, the jury could have determined that J.F. was not sexually interested in Sanders and the jury could have found that she did not consent. The jury could otherwise have found that J.F. was incapable of resisting or of appraising the situation. In this regard, the jury could have found from J.F.'s testimony regarding her memory loss, and from the evidence regarding her blood alcohol level, that at the time of penetration, she was so incapacitated that she was incapable of resisting Sanders or appraising the circumstances. The jury could also have found that Sanders was aware of, and took advantage of, J.F.'s incapacity. Viewing and construing the evidence in this case

most favorably to the State, we conclude that there was sufficient evidence to support Sanders' conviction for first degree sexual assault.

*Excessive Sentence in Procuring Alcohol Conviction.*

Finally, Sanders asserts that his sentence for procuring alcohol for a minor is excessive. We conclude that the district court did not abuse its discretion in sentencing Sanders on this count.

Sanders was sentenced to 5 years' probation on the first degree sexual assault conviction and to 90 days in jail and a $500 fine on the conviction for procuring alcohol for a minor. Sanders argues that the sentence in the alcohol conviction was excessive because he should not have been given imprisonment on that conviction when he was given probation on the sexual assault conviction. He argues that if grounds existed to make probation appropriate for the sexual assault conviction, the same grounds should have required probation rather than imprisonment on the alcohol conviction.

Procuring alcohol for a minor in violation of § 53-180 is a Class I misdemeanor. Neb. Rev. Stat. § 53-180.05(1) (Reissue 2004). The maximum penalty for a Class I misdemeanor is "not more than one year imprisonment, or one thousand dollars fine, or both." Neb. Rev. Stat. § 28-106(1) (Cum. Supp. 2000). Therefore, Sanders' sentence of 90 days in jail and a $500 fine is within statutory limits, and his sentence will not be disturbed on appeal absent an abuse of discretion by the district court. See *State v. Banes*, 268 Neb. 805, 688 N.W.2d 594 (2004).

As the State notes and the record supports, this was Sanders' second conviction for procuring alcohol for a minor. Sanders was also previously convicted of selling alcohol without a license and of violating a permit for a public dance. Whereas Sanders had a prior history of alcohol offenses, he lacked a prior history of violent crimes. Considering that Sanders had previous convictions related to alcohol offenses, we do not find the sentence on this count excessive. Contrary to Sanders' argument, it was not an abuse of discretion to sentence Sanders to imprisonment on the alcohol conviction while sentencing him to probation on the assault conviction because different factors came to bear in the sentencing considerations for each offense. We find no abuse of

discretion in Sanders' sentence on the procuring alcohol for a minor offense.

## CONCLUSION

We conclude that the district court did not err in rejecting Sanders' various challenges to the jury selection process and in overruling his request for discovery of information regarding jurors. We also conclude that the court did not err in permitting the testimony of Ross, in instructing the jury on "without consent," and in failing to instruct regarding "significant abnormality." We further conclude that there was sufficient evidence to support Sanders' conviction for first degree sexual assault. Finally, we conclude that Sanders' sentence for procuring alcohol for a minor was not an abuse of discretion. We therefore affirm Sanders' convictions and sentences.

AFFIRMED.