STATE OF NEBRASKA, APPELLEE, V.
CLIFFORD J. DAVLIN, APPELLANT.
719 N.W.2d 243

Filed August 4, 2006.   No. S-05-547.

Dennis R. Keefe, Lancaster County Public Defender, Scott P. Helvie, and Matthew G. Graff for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

CONNOLLY, GERRARD, STEPHAN, McCORMACK, and
MILLER-LERMAN, JJ., and CASSEL, Judge, and HANNON, Judge,
Retired.

MILLER-LERMAN, J.
## NATURE OF CASE
Clifford J. Davlin appeals his conviction and sentence for second degree murder. After his first conviction was reversed by this court in *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002), Davlin was convicted a second time. Following his second conviction, Davlin was sentenced to life in prison. On appeal, Davlin assigns error to the jury instructions given by the district court for Lancaster County, the court's denial of his motion to continue the trial, and the court's admission of certain evidence including expert testimony, Davlin's statements to detectives, and photographs of the victim's body. Davlin also raises issues with regard to double jeopardy, the form of the verdict, sentencing, and ineffective assistance of counsel. We affirm Davlin's conviction and sentence.

## STATEMENT OF FACTS
The underlying facts of this case were described in Davlin's appeal of his first conviction as follows:

Tamara Ligenza, also known as Tamara Martin, was found dead in her Lincoln apartment after a fire on September 7, 1993. Ligenza was legally blind and was 6 months pregnant at the time of her death. Ligenza had been living with Davlin, but on September 6, Ligenza told Davlin to leave the apartment. . . . Davlin remained at or near the apartment building on September 6 and into the morning of September 7.

Ligenza was last seen alive, by her roommate, at about 1 a.m. on September 7, 1993. Ligenza lived in a house that had been converted to a duplex with one entrance that led to both apartments. Witnesses who lived in the building testified that they were awakened at approximately 4:30 a.m. by reports of a fire in the building. Davlin was identified as being in the duplex at the time of the fire, staying in the other apartment. Firefighters removed a severely burned body from the bedroom of Ligenza's apartment; the body

was later identified by dental records as Ligenza's. An autopsy was performed, and the coroner's physician concluded that Ligenza had been killed by manual strangulation prior to the fire.

*State v. Davlin*, 263 Neb. at 286-87, 639 N.W.2d at 638-39.

Davlin was charged in 1997 with first degree murder in connection with the death of Ligenza. Davlin was also charged with arson. Following a trial in 2000, the jury found Davlin guilty of second degree murder and arson. He appealed to this court and assigned various errors. We first rejected Davlin's assertion that the district court erred in retroactively applying this court's decision in *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998), and in therefore not instructing the jury that malice was an element of second degree murder. However, we concluded that the district court had committed reversible error when it instructed the jury on the essential elements of second degree murder by stating that in order to convict Davlin, the jury must find that Davlin caused Ligenza's death " 'intentionally, but *without malice*.' " (Emphasis supplied.) *Davlin*, 263 Neb. at 292, 639 N.W.2d at 642. We therefore reversed Davlin's conviction for second degree murder and remanded the cause for a new trial on that count. We noted that because the jury acquitted Davlin of first degree murder, the Double Jeopardy Clause barred the State from retrying Davlin for first degree murder but did not prevent the State from proceeding with a new trial on a charge of second degree murder because the evidence at the first trial was sufficient to support Davlin's conviction. We rejected Davlin's remaining assignments of error and affirmed his conviction and sentence for arson. *Davlin, supra.* Among the assignments of error we rejected were assertions that the district court erred in admitting the expert testimony of Ken Scurto, a fire investigator for the State Fire Marshal's office, and Brian Nehe, a fire inspector for the city of Lincoln.

Upon remand, the State, on April 12, 2002, filed an amended information charging Davlin with having caused the death of Ligenza "intentionally, but without premeditation." On July 3, Davlin filed a motion to quash the amended information. He argued that the information should be quashed because it failed to allege that the killing was committed with "malice" and because

it failed to allege that the killing was committed with the "specific intent to kill." The district court denied the motion to quash.

On December 27, 2002, Davlin filed a plea in bar asserting that a second prosecution for second degree murder would violate the Double Jeopardy Clause of the 5th and 14th Amendments to the U.S. Constitution and article I, § 12, of the Nebraska Constitution. The district court overruled the plea in bar, and Davlin filed an interlocutory appeal of the denial to this court. We granted the State's motion for summary affirmance and affirmed the district court's order overruling the plea in bar. *State v. Davlin*, 266 Neb. xxiv (No. S-03-151, July 16, 2003). The State filed a second amended information on December 6, 2004, charging Davlin with second degree murder.

Prior to the new trial, Davlin filed a motion for a hearing regarding the State's experts including, inter alia, the fire experts, Scurto and Nehe, and the pathologists, Drs. John Porterfield, Matthias Okoye, and Thomas Bennett. Davlin sought a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). Davlin also moved in limine to preclude the State from presenting the opinion testimony of such witnesses. Davlin specified that his challenge was not to the qualifications of the witnesses or to the validity of the scientific methods used, but, rather, that he was challenging the reliability of the experts' application of the scientific methods to the facts of this case. Following a hearing, the court denied Davlin's motion in limine with regard to the opinions of Porterfield, Okoye, and Bennett. The court generally denied the motion in limine with regard to the opinions of Scurto and Nehe, but sustained the motion in limine as to Scurto's opinion regarding the duration of the fire. The testimony of the pathologists and of the fire experts was admitted at trial over Davlin's objections.

Jury selection began on January 18, 2005. Before the jurors were brought into the courtroom, Davlin moved to continue the trial on the basis that he wished to secure the appearance of two witnesses who had appeared for the State in the first trial and who had been subpoenaed but had not been located by the State. Davlin asserted that both could provide potentially exculpatory

testimony. The court denied Davlin's motion to continue, and jury selection and trial proceeded. Neither the State nor Davlin offered the testimony of these witnesses from the prior trial into evidence at this trial.

At trial, the court admitted over Davlin's objection recordings of three conversations between Davlin and certain Lincoln police detectives. These included a September 7, 1993, conversation with Det. Larry Barksdale, a September 11 conversation with Det. James Breen, and a November 22 conversation with Barksdale. Each of the conversations concerned events surrounding the fire, Davlin's relationship with Ligenza, and the police investigation of the fire and Ligenza's death. The court also admitted, over Davlin's objections, various photographs and slides of Ligenza's body. These included two photographs of the back of the body, five slides taken during the autopsy, and five photographs that were made from the autopsy slides.

The case was submitted to the jury on January 31, 2005. The court instructed the jury on the elements of second degree murder by stating that in order to find Davlin guilty, the jury must find that Davlin caused the death of Ligenza and that he "did so intentionally, but without premeditation." On February 1, the jury returned a verdict of guilty of second degree murder. The verdict form signed by the presiding juror stated "**We, the Jury**, duly impaneled and sworn in the above-entitled cause, do find the defendant, CLIFFORD J. DAVLIN, **guilty of second degree murder**."

On April 5, 2005, the court sentenced Davlin to life imprisonment and ordered that the sentence be served consecutively to any other sentences being served by Davlin, including the sentence previously imposed for arson. In imposing the sentence, the court stated:

> Having regard for the nature and circumstances of the crime and the history, character and condition of . . . Davlin, the Court finds that imprisonment of . . . Davlin is necessary for the protection of the public and because a lesser sentence would depreciate the seriousness of his crime and promote disrespect for the law.
>
> I do not believe that I am in a position to change the sentence that I imposed previously for the same offense.

It is therefore the judgment and the sentence of the Court that you, Clifford J. Davlin, be and hereby are ordered committed to an institution under the jurisdiction of the Nebraska Department of Correctional Services for a period of life.

Davlin appeals his conviction and sentence.

## ASSIGNMENTS OF ERROR

Davlin asserts on appeal that his conviction for second degree murder in this case was in violation of the Double Jeopardy Clause. Davlin also asserts that the district court erred in (1) failing to quash the information because it did not contain and allegation that Davlin had the specific intent to kill Ligenza and failing to instruct the jury that it must find that Davlin had the specific intent to kill Ligenza, (2) failing to instruct the jury that malice was a material element of second degree murder, (3) failing to grant his motion to continue trial, (4) admitting into evidence the opinions of the fire investigators as to the cause and nature of the fire, (5) admitting into evidence the opinions of the pathologists as to the cause of Ligenza's death, (6) admitting into evidence the tape recordings of his statements to police detectives, and (7) admitting into evidence photographs and slides of Ligenza's body. Davlin also asserts (1) that the jury verdict form was unclear and ambiguous because it did not specify that Ligenza was the victim of second degree murder, (2) that the court abused its discretion in sentencing him because the court felt bound to impose the same sentence that it had imposed after the prior conviction, and (3) that he was denied effective assistance of counsel in various respects.

## STANDARDS OF REVIEW

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Mason*, 271 Neb. 16, 709 N.W.2d 638 (2006).

■ A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be

disturbed on appeal absent an abuse of discretion. *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Grosshans*, 270 Neb. 660, 707 N.W.2d 405 (2005). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *Id.*

■ The standard for reviewing the admissibility of expert testimony is abuse of discretion. *Mason, supra.* A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *State v. Hall*, 270 Neb. 669, 708 N.W.2d 209 (2005).

■ A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Aldaco*, 271 Neb. 160, 710 N.W.2d 101 (2006).

## ANALYSIS

*Double Jeopardy.*

Davlin first asserts that his conviction for second degree murder on retrial subjected him to double jeopardy in violation of the federal and Nebraska Constitutions. We conclude that because the issue has already been decided by this court in this prosecution, reconsideration of the issue is precluded in this appeal. See *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

Davlin argues that he was " 'impliedly acquitted' " of second degree murder in the first trial because at that trial, the court instructed the jury that to convict Davlin of second degree murder, it must find that he caused Ligenza's death " 'intentionally, but *without malice.*' " (Emphasis supplied.) Brief for appellant at 18-19. The court in the first trial wherein Davlin was convicted of second degree murder defined "malice" as an intentional act, and Davlin argues that when the jury in that trial found that he

acted "without malice," it found that he did not act intentionally. Because it is a necessary element of second degree murder that the defendant acted " 'intentionally, but without premeditation,' " Davlin argues that the jury in the first trial effectively acquitted him of second degree murder and that therefore, it was a violation of double jeopardy to try him a second time for second degree murder. *Id.* at 18.

However, we have already decided the issue against Davlin. In remanding the cause in the first appeal, we specifically stated that the Double Jeopardy Clause did not "prevent the State from proceeding with a new trial on a charge of second degree murder." *Davlin,* 263 Neb. at 309, 639 N.W.2d at 653. In addition, prior to the second trial, Davlin filed a plea in bar on double jeopardy grounds. Davlin took an interlocutory appeal of the district court's denial of the plea in bar, and we summarily affirmed the denial. *State v. Davlin,* 266 Neb. xxiv (No. S-03-151, July 16, 2003).

▪ Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *State v. Gales,* 269 Neb. 443, 694 N.W.2d 124 (2005). The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution. *State v. Hall,* 270 Neb. 669, 708 N.W.2d 209 (2005). Matters previously addressed in an appellate court are not reconsidered unless the petitioner presents materially and substantially different facts. *Id.* Davlin has presented no such facts.

Our previous holdings that the Double Jeopardy Clause did not prevent retrial constitute the law of the case and preclude reconsideration of the issue in this appeal. We therefore reject Davlin's first assignment of error.

*"Specific Intent" in Information and in Elements Instruction.*

Davlin next asserts that the district court erred in failing to quash the amended information because it failed to allege that Davlin had the specific intent to kill Ligenza and that the court erred in failing to instruct the jury that in order to find Davlin

guilty of second degree murder, the jury needed to find that Davlin had the specific intent to kill Ligenza. Because both the information and the elements instruction used statutory language, we conclude that the district court did not err in denying the motion to quash or in giving its elements instruction.

In the operative information, the State charged Davlin with second degree murder pursuant to Neb. Rev. Stat. § 28-304 (Reissue 1995) and alleged that Davlin "did cause the death of [Ligenza] intentionally, but without premeditation." Davlin moved to quash the information on the basis that, inter alia, the information failed to allege that Davlin had the specific intent to kill. The district court rejected the motion. We have stated that where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is sufficient. *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005). The information in this case used the language of § 28-304(1) which provides, "A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." We therefore conclude that the district court did not err in rejecting Davlin's motion to quash the information.

With respect to the elements instruction, we note that Davlin concedes that trial counsel failed to object to the instruction and therefore failed to preserve the issue for appeal. However, we consider the instruction issue because Davlin also asserts that he received ineffective assistance of trial counsel when counsel failed to object to the instruction. We conclude that the instruction was not erroneous and that therefore, Davlin was not prejudiced when counsel did not object to the instruction.

Davlin argues that the elements instruction, which stated that the jury must find Davlin caused the death of Ligenza "intentionally, but without premeditation," defined second degree murder as a general intent crime and that therefore, the jury could find him guilty if it found that he intentionally set in motion events that caused Ligenza's death even though he did not specifically intend to kill her. Davlin argues that this court has recognized second degree murder as a specific intent crime because we have said that second degree murder "require[s] the intentional killing of another human being," *State v. McCracken*, 260

Neb. 234, 251, 615 N.W.2d 902, 917-18 (2000), *abrogated on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002), and that "[t]he distinction between second degree murder and manslaughter is the presence or absence of intent to kill," *State v. Jackson*, 258 Neb. 24, 38, 601 N.W.2d 741, 752 (1999).

▄▄ We have stated that "in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute." *State v. Sanders*, 269 Neb. 895, 913, 697 N.W.2d 657, 672 (2005). The elements instruction in this case used the language of the statute and stated that in order to find Davlin guilty, the jury was required to find Davlin "caused the death" of Ligenza "intentionally, but without premeditation."

Furthermore, the instruction as stated requires a finding of specific rather than general intent. The instruction requires that the jury find Davlin intentionally "caused the death" of Ligenza; therefore, contrary to Davlin's assertion, the instruction would not permit the jury to find Davlin guilty of second degree murder if the jury found that, without an intent to cause Ligenza's death, Davlin simply set in motion events that happened to cause her death.

We conclude that the elements instruction was not erroneous in the respect challenged, and we further conclude that the fact counsel did not object to the instruction did not prejudice Davlin's defense.

*"Malice" in Information and in Elements Instruction.*

Davlin asserts that the district court erred in failing to quash the information because it did not allege malice and in failing to include malice as an element of second degree murder in its instructions to the jury. Davlin argues that the trial court erred by retroactively applying this court's holding in *State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). Davlin concedes that this court decided this question against him in the appeal of his first conviction. See *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002). We reject this assignment of error, both on its merits for the reasons set forth in *Davlin, supra*, and on the further ground that our holding in that opinion is the law of the case. See, *State v. Hall*, 270 Neb. 669, 708 N.W.2d 209 (2005); *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005).

*Motion to Continue Trial.*

Davlin asserts that the district court abused its discretion by failing to grant his motion to continue the trial. We find no abuse of discretion.

Davlin moved for a continuance to allow time to locate two witnesses who had testified at the first trial. Davlin concedes that his motion to continue trial was an oral motion rather than a written motion as required under Neb. Rev. Stat. § 25-1148 (Reissue 1995). However, he notes that this court has stated that failure to comply with § 25-1148 "is but a factor to be considered in determining whether a trial court abused its discretion in denying a continuance." *State v. Santos,* 238 Neb. 25, 28, 468 N.W.2d 613, 615 (1991). Davlin further argues that if his motion was properly denied because it was an oral rather than a written motion, then trial counsel provided ineffective assistance by failing to make a written motion.

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Gales, supra.* A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

Davlin asserts in his appellate brief that one of the two witnesses who had testified at the first trial could have been helpful to the defense because his fingerprints were found on a can of charcoal lighter fluid in the commons area of the house in which Ligenza was killed. He further asserts that the other witness was "thought to" have seen a " 'mystery man' " who was at Ligenza's apartment on the night she was killed. Brief for appellant at 26. He also generally asserts that both men were "possible" alibi witnesses. *Id.*

We conclude that the district court did not abuse its discretion when it denied a continuance. At the trial level, Davlin generally described the testimony the witnesses could have provided as noted above, and he made the assertion that they "might" have exculpatory information. Upon questioning by the court, Davlin's counsel could not give any reason to think that the witnesses would be found within days or weeks if a continuance

were granted. We further note that Davlin's argument that the witnesses could have provided helpful testimony is belied by the fact that although both witnesses were apparently unavailable, he did not attempt to enter any of their prior testimony into evidence at this trial. We reject this assignment of error, and we conclude that trial counsel's failure to file a written motion did not prejudice Davlin's defense.

*Testimony of Fire Experts.*

Davlin asserts that the district court erred in admitting into evidence the opinions of the fire investigators Scurto and Nehe. He argues that their opinions as to the cause and nature of the fire were not admissible because the fire investigation methodology they used was not valid in the abstract and was not applied in a reliable manner. We conclude that the district court did not abuse its discretion in admitting the testimony of Scurto and Nehe.

We note first that the State argues that law-of-the-case doctrine bars consideration of the issue in this appeal because the issue of admissibility of Scurto's and Nehe's testimony was decided against Davlin in the appeal from the prior trial. However, because an expert's testimony and opinions may vary from one trial to the next, we determine that the law-of-the-case doctrine does not necessarily preclude a foundational challenge to an expert's testimony in a retrial. We further note that in *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), we adopted the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and ordered that such standards be applied prospectively for trials commencing on or after October 1, 2001. The *Daubert/Schafersman* standards were not applicable in Davlin's first trial which commenced in March 2000, *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002), but were applicable in the retrial which commenced in January 2005. We therefore consider the district court's decision of the *Daubert/Schafersman* challenge to the expert testimony presented at retrial.

The standard for reviewing the admissibility of expert testimony is abuse of discretion. *State v. Mason*, 271 Neb. 16, 709 N.W.2d 638 (2006). An expert's opinion is ordinarily admissible under Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995), if the witness (1) qualifies as an expert, (2) has

an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. *Mason, supra*. When the opinion involves scientific or specialized knowledge, this court held in *Schafersman, supra*, that we will apply the principles of *Daubert, supra*. Under our recent *Daubert/Schafersman* jurisprudence, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. This gatekeeping function entails a preliminary assessment whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Schafersman, supra*.

A trial court's evaluation of the admissibility of expert opinion testimony is essentially a four-step process. *Mason, supra*. The court must first determine whether the witness is qualified to testify as an expert by reference to his or her knowledge, skill, experience, training, and education. If it is necessary for the court to conduct a *Daubert* analysis, then the court must determine whether the reasoning or methodology underlying the expert testimony is scientifically valid and reliable. To aid the court in its evaluation, the court may consider several factors, including but not limited to whether the reasoning or methodology has been tested and has general acceptance within the relevant scientific community. Once the reasoning or methodology has been found to be reliable, the court must determine whether the methodology was properly applied to the facts in issue. In making this determination, the court may examine evidence to determine whether the methodology was properly applied and whether the protocols were followed to ensure that the tests were performed properly. Finally, the court determines whether the probative value of the expert evidence and the opinions related thereto are substantially outweighed by the danger of unfair prejudice, as required under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995). See *Mason, supra*.

The district court in this case noted that as to both Scurto and Nehe, Davlin did not challenge their individual qualifications, nor did he challenge the scientific validity or reliability of the methodology they employed. Instead, Davlin's challenge was to whether the methodology was applied in a reliable manner. The

court noted that Scurto and Nehe both generally followed the guidelines set forth in the National Fire Protection Association's publication No. 921 (NFPA 921). The court noted that although neither Scurto nor Nehe rigidly followed the guidelines of NFPA 921, such guidelines were intended as a model, and that Scurto's and Nehe's deviations did not affect the reliability of their opinions. The district court found that a reasonable basis existed for Scurto's and Nehe's opinions as to the origin of the fire and as to whether the fire was intentionally set. The court did not find a reasonable basis for, and therefore did not allow, Scurto's opinion as to the duration of the fire.

On appeal, Davlin criticizes the methodology followed by Scurto and Nehe as well as their application of such methodology. The district court noted that Scurto and Nehe generally followed the guidelines of NFPA 921. As we have recently noted, NFPA 921 has been accepted as a valid and reliable methodology. See *Perry Lumber Co. v. Durable Servs.*, 271 Neb. 303, 710 N.W.2d 854 (2006). Davlin does not appear to have challenged the scientific validity and reliability of the methodology set forth by NFPA 921 at the trial level, and nothing in the record calls such validity and reliability into question. As we noted in *Perry Lumber Co.*, the *Daubert* and *Schafersman* standards do not require that courts " ' " 'reinvent the wheel each time that evidence is adduced,' " ' " 271 Neb. at 311, 710 N.W.2d at 861, and because Davlin did not present evidence to call the methodology into question, a *Daubert* analysis of the methodology itself was not necessary in this case.

Rather than challenging the methodology, Davlin challenged Scurto's and Nehe's application of such methodology. The district court in this case thoroughly reviewed the procedures used by Scurto and Nehe and, as noted above, found that a reasonable basis existed for their opinions as to the origin of the fire and as to whether the fire was intentionally set. Although Davlin asserts that Scurto and Nehe failed to properly follow certain aspects of the NFPA 921 methodology, our review of the district court's consideration of procedures followed by Scurto and Nehe leads us to conclude that the district court did not abuse its discretion in determining that they had reasonable bases for the opinions the court allowed them to give and that the district

court therefore did not abuse its discretion by admitting the opinion testimony of Scurto and Nehe. We reject this assignment of error.

*Testimony of Pathologists.*

Davlin also asserts that the district court erred in rejecting his *Daubert* challenges and admitting the opinions of the pathologists, Porterfield, Okoye, and Bennett. He argues that their opinions regarding the cause of Ligenza's death failed to meet *Daubert* standards because they did not apply their methodologies in a reliable manner. We conclude that the district court did not abuse its discretion in admitting the testimony of Porterfield, Okoye, and Bennett.

Similar to its response with respect to the challenges to the fire experts' testimony, the State asserts that consideration of Davlin's challenges to the pathologists' testimony is barred by the law-of-the-case doctrine because the same evidence was challenged in the first appeal. However, as noted above with regard to the fire experts, an expert's testimony and opinions may vary from one trial to the next, and the law-of-the-case doctrine does not necessarily preclude a foundational challenge to the expert's testimony in a retrial. We therefore consider Davlin's challenges to the pathologists' testimony.

Davlin does not challenge the doctors' qualifications, nor does he question their methodologies. Instead, he claims that there were failings in the manner in which Porterfield conducted the original autopsy and that such failings made his opinions unreliable. He further argues that the failings in Porterfield's autopsy also made Okoye's and Bennett's opinions unreliable because, in addition to their own failings, they based their opinions in part on Porterfield's findings.

The district court in this case thoroughly reviewed the procedures used by Porterfield, Okoye, and Bennett and, as noted above, found that a reasonable basis existed for their opinions. We note that much of Davlin's argument challenging the reliability of Porterfield's examination is based on the testimony of a pathologist who testified at Davlin's first trial and critiqued Porterfield's procedures and opinions. Although testimony critiquing the procedures and opinions of another expert is an acceptable form of expert testimony, *Perry Lumber Co. v. Durable*

*Servs.*, 271 Neb. 303, 710 N.W.2d 854 (2006), a reasonable critique of an expert's procedures and opinion does not necessarily indicate that such procedures were so unreliable as to make the expert's opinion testimony inadmissible. Our review of the district court's consideration of the procedures followed by Porterfield, Okoye, and Bennett leads us to conclude that the district court did not abuse its discretion in determining that they had reasonable bases for their opinions and that the court therefore did not abuse its discretion by admitting the opinion testimony of Porterfield, Okoye, and Bennett. We reject this assignment of error.

*Tape Recordings of Davlin's Statements to Police Detectives.*

Davlin asserts that the district court erred in admitting tape recordings of three conversations Davlin had with police detectives Breen and Barksdale. He argues that his statements were not relevant and that even if they were relevant, they should have been excluded pursuant to Neb. Evid. R. 403, § 27-403, because the probative value of the statements was substantially outweighed by the danger of unfair prejudice. We conclude that the evidence was relevant and that it was not unfairly prejudicial.

Davlin argues that the tape recordings were not relevant because in the conversations, he did not make an admission of guilt, and because his statements shed no light on how Ligenza died or whether Davlin had the opportunity to cause her death. He further argues that even if the statements were relevant, they were unfairly prejudicial because they contained statements that portray him in a negative light. These statements included the following: a reference to the fact that Davlin had been in the military during the Vietnam War, references to Davlin's attempts to hire a private investigator to look into Ligenza's death, references to the fact that Davlin had gone on a "flower drive" to raise money to buy flowers for Ligenza's funeral, and a reference that Davlin had found a lock of Ligenza's hair after her death and had kept it as a keepsake. He argues that these statements portray him as "a rather strange individual who seemed to be discussing peculiar subject matter" with the police. Brief for appellant at 43.

The exercise of judicial discretion is implicit in determinations of relevancy under Neb. Evid. R. 401, Neb. Rev. Stat.

§ 27-401 (Reissue 1995), and prejudice under Neb. Evid. R. 403, § 27-403, and a trial court's decision under these evidentiary rules will not be reversed absent an abuse of discretion. *State v. Sanders*, 269 Neb. 895, 697 N.W.2d 657 (2005). We conclude that the district court did not abuse its discretion in admitting the statements. Davlin's conversations with the police detectives included discussion of various matters concerning Davlin's activities preceding and following Ligenza's death. The conversations also included discussion regarding Davlin's relationship with Ligenza. We determine that the court could reasonably have concluded that these discussions were relevant to establish that Davlin had the opportunity to commit the crime, in that he was near Ligenza's apartment at the time she was killed and the fire was started and that he had a motive to commit the crime because of the nature of his relationship with Ligenza. We also determine that the court could reasonably have concluded that the tape recordings were not unfairly prejudicial. The portions of the conversations which Davlin claims portray him as a "strange" individual were of minor duration in the context of the entire conversations and do not portray Davlin in such a negative light that they would be unfairly prejudicial in the context of the entirety of the statements. We conclude that the district court did not abuse its discretion by admitting the tape recordings into evidence, and we reject this assignment of error.

*Admission of Photographs and Slides of Ligenza's Body.*

Davlin asserts that the district court erred in admitting into evidence photographs of the back of Ligenza's body, photographs taken during the autopsy, and slides of the autopsy photographs. Davlin argues that the photographs were not relevant and that even if they were relevant, their admission was unfairly prejudicial. We conclude that the photographs were relevant and that their admission was not unfairly prejudicial.

Davlin argues that the photographs were not relevant because none of the photographs showed physical injury to the throat and they therefore did not support the State's theory that Ligenza was strangled. He also argues that the photographs were not necessary to establish identity, nor were they relevant to any issue regarding the condition of the body or the nature of the injuries or to establishing malice or intent. Davlin argues that

even if the photographs were relevant, their probative value was outweighed by the danger of unfair prejudice. He asserts that the shocking, gruesome, and grisly nature of the photographs of a burned corpse would be so emotionally overwhelming as to override the jury's objectivity.

The admission of photographs of a gruesome nature rests largely within the discretion of the trial court, which must determine their relevancy and weigh their probative value against their prejudicial effect. *State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). If a photograph illustrates or makes clear some controverted issue in a homicide case, a proper foundation having been laid, it may be received, even if gruesome. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). Likewise, in a homicide prosecution, photographs of a victim may be received into evidence for purposes of identification, to show the condition of the body or the nature and extent of wounds and injuries to it, and to establish malice or intent. *State v. Clark*, 255 Neb. 1006, 588 N.W.2d 184 (1999).

We determine that the photographs were relevant. The photographs of the back of the body were used to illustrate testimony by the pathologists who stated that the fact that the back was not as badly burned as the front and sides indicated that the fire started after Ligenza was dead because otherwise she would have attempted to escape and the burns would have been more evenly distributed. The slides and photographs from the autopsy were used to illustrate portions of the testimony of the doctor who performed the autopsy. The photographs illustrated observations made by the doctor from which he formed opinions regarding the cause and timing of death. The testimony of the pathologists and the doctor who performed the autopsy was relevant because it indicated that Ligenza's death was not caused by the fire, therefore supporting the State's theory that Davlin strangled Ligenza before he started the fire, and because it contradicted an alternative finding that the fire caused Ligenza's death. The photographs supported the testimony and were relevant to the same issues.

Because the photographs and slides were relevant to important issues in the case, we conclude that the district court did not abuse its discretion in determining that their probative value

outweighed their potential prejudicial effect and in admitting the photographs and slides into evidence. We reject this assignment of error.

*Verdict Form.*

Davlin asserts that the verdict form returned by the jury was insufficient as a matter of law because it was unclear and ambiguous. Davlin concedes that no objection was made at trial to the verdict form, but he additionally argues ineffective assistance of counsel for failure to object. We conclude that the verdict form was sufficient and that the fact counsel did not object to the verdict form did not prejudice Davlin's defense.

Davlin argues that the verdict form was insufficient because it simply stated that Davlin was guilty of second degree murder and it did not name Ligenza as the victim. Davlin notes that there was evidence that Ligenza was pregnant at the time of her death, and he argues that the jury might have found that he had caused "a death other than the death of Tamara Ligenza." Brief for appellant at 48.

We do not find the verdict form in this case to be indefinite or uncertain. The verdict form states that the jury found Davlin "guilty of second degree murder." Although the form does not name the victim, the jury instructions made clear to the jury that the charges involved the death of Ligenza. The court instructed the jury that in order to find Davlin guilty of second degree murder, it needed to find that he caused the death of Ligenza. Therefore, the verdict form stating that the jury found Davlin guilty of second degree murder sufficiently indicates that the jury found Davlin had caused the death of Ligenza. We reject Davlin's assignment of error and conclude that the fact counsel did not object to the verdict form did not prejudice his defense.

*Sentencing.*

Davlin asserts that the district court abused its discretion when it imposed a sentence of life imprisonment simply because the court had given the same sentence after his first conviction. We conclude that the court did not abuse its discretion in sentencing Davlin.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.

*State v. Aldaco*, 271 Neb. 160, 710 N.W.2d 101 (2006). Second degree murder is a Class IB felony, § 28-304(2), and a sentence of life imprisonment is within the statutory limits for a Class IB felony, Neb. Rev. Stat. § 28-105 (Reissue 1989). Therefore, we will not disturb the sentence absent an abuse of discretion.

Davlin argues that the court felt that it was bound to give the same sentence it gave after his first conviction and that the court therefore did not consider all relevant factors. Davlin notes that at sentencing, the court stated, "I do not believe that I am in a position to change the sentence that I imposed previously for the same offense." Davlin argues that this statement indicates that the court did not consider the appropriate factors and did not use its discretion but simply gave the same sentence that was given in the first trial.

We do not read the court's statement as indicating that the court felt it was bound to give the same sentence as in the first trial. To the contrary, the court stated:

> Having regard for the nature and circumstances of the crime and the history, character and condition of . . . Davlin, the Court finds that imprisonment of . . . Davlin is necessary for the protection of the public and because a lesser sentence would depreciate the seriousness of his crime and promote disrespect for the law.

We read the court as stating that after reviewing the presentence report prepared for this trial and considering all the relevant factors, the court had not seen anything that would change its conclusion that a sentence of life imprisonment was appropriate. The court used its discretion and simply noted that it had come to the same conclusion it had come to in the first trial. We therefore conclude that the court did not abuse its discretion in sentencing Davlin.

*Other Assignments of Error.*

In his brief on appeal, Davlin makes additional arguments not repeated here in which he claims error at the retrial. We have considered all such claims and find them to be without merit.

*Ineffective Assistance of Counsel.*

Finally, Davlin asserts that he was denied effective assistance of trial counsel. Davlin gives various reasons why trial counsel

was ineffective, including, inter alia, failure to adequately investigate and prepare the case, failure to adequately cross-examine and confront witnesses, failure to present certain witnesses, and failure to adequately challenge certain evidence. We conclude that each of Davlin's claims of ineffective assistance of counsel not previously commented on in this opinion either is without merit or is not capable of adequate review on direct appeal.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. See *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006). Certain of Davlin's allegations of ineffective assistance of counsel have been considered herein with respect to other assignments of error, specifically, trial counsel's purported failures to object to the elements instruction, to file a written motion to continue, and to object to the verdict form. We have determined that such purported failures did not prejudice Davlin's defense, and we therefore reject Davlin's claims of ineffective assistance with respect to such claims.

Davlin has different counsel on appeal, and in order to raise the issue of ineffective assistance of trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on post-conviction review. See *id*. Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *Id*.

In order to preserve his claims of ineffective assistance of counsel, Davlin has raised various claims which he recognizes require an evidentiary hearing and cannot be resolved on direct appeal. We conclude that the record on appeal is not sufficient to review Davlin's claims of ineffective assistance, other than those claims rejected above, and we therefore do not address Davlin's remaining claims of ineffective assistance of counsel.

## CONCLUSION

Having rejected each of Davlin's assignments of error, we affirm Davlin's conviction and sentence.

AFFIRMED.

HENDRY, C.J., and WRIGHT, J., not participating.