IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GARIBO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ARMANDO GARIBO, APPELLANT.

Filed November 22, 2016.    No. A-16-224.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Thomas Campbell, of TLN Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

MCCORMACK, Retired Justice.

## I. INTRODUCTION

Armando Garibo appeals from his conviction for first degree sexual assault of a child. On appeal, Garibo argues that he should have been granted a directed verdict based on insufficient evidence and that he received ineffective assistance of trial counsel in various regards. We find no merit to Garibo's assertions on appeal, and we affirm.

## II. BACKGROUND

The victim of the sexual assault involving Garibo was Y.M. Garibo and Y.M.'s mother are in a romantic relationship and have other children together. Garibo is not biologically related to Y.M. but has raised Y.M. since the age of two. Y.M. considers Garibo to be her dad.

In October 2015, Y.M. told her mother that Garibo had sexually assaulted her. Y.M. was 13 years old at the time. Y.M.'s mother took her to a pediatrician at Creighton University. Y.M. was upset and crying as she told the pediatrician that her stepfather had been touching her in her private parts. Y.M. reported that the abuse had started when she was four or five years old and had continued until recently when Garibo left the home. The pediatrician followed the guidelines for reporting child sexual abuse and contacted the police.

After a brief interview, police transported Y.M. to Project Harmony for a full forensic interview. The forensic interviewer characterized Y.M.'s admission as a "reluctant disclosure." After her forensic interview revealing the abuse, Y.M. attended several counseling sessions.

Garibo was interviewed by police shortly after Y.M. reported the abuse. A Spanish-speaking police officer served as a translator for Garibo while a detective interviewed him. Garibo waived his *Miranda* rights and agreed to speak with police. Initially, Garibo denied that he had abused Y.M. but eventually admitted that "it just happened suddenly." Garibo described that once, approximately five years ago, he put his finger inside of Y.M. for a minute and a half and his penis inside of Y.M. for a minute. Following the interview, Garibo was arrested and charged with first degree sexual assault of a child.

The matter proceeded to a jury trial. At trial, Y.M. recanted her earlier statements and claimed that Garibo had never touched her inappropriately. The jury found Garibo guilty and he was sentenced to 40 to 50 years' imprisonment with credit for 356 days served.

Garibo appeals. Additional facts will be discussed, as necessary, in the analysis section below.

## III. ASSIGNMENTS OF ERROR

Garibo argues that the trial court erred in not granting his motion for a directed verdict because there was insufficient evidence to prove the charge against him and that he received ineffective assistance of counsel.

## IV. STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). Determinations regarding whether counsel was deficient and whether the defendant was prejudiced are questions of law that an appellate court reviews independently of the lower court's decision. *Id.* The court reviews factual findings for clear error. *Id.*

## V. ANALYSIS

### 1. DIRECTED VERDICT

Garibo argues that the district court erred in failing to direct a verdict due to insufficient evidence. Garibo points to Y.M.'s recantation and the lack of physical evidence tying him to the crime as the reasons why the court should have found the evidence insufficient. We find no merit to this assignment of error.

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). If there is any evidence which will sustain a finding for the party against whom a motion for a directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

Although Y.M. denied the sexual assault at trial, the doctor who had spoken with Y.M. testified that Y.M. had disclosed the abuse to her. The State also introduced the videotaped interview in which Garibo initially denied and then admitted penetrating Y.M. on one occasion five years prior.

The State also presented the testimony of the supervisor of the RSafe children's program at Lutheran Family Services who counseled Y.M. for four sessions in April and May 2015. The counselor testified that Y.M. had never denied the abuse and that Y.M. was "very upset" about what had happened to her. The counselor also testified that during one session with Y.M. and her mother, Y.M. became upset and started crying when her mother stated, "'Well, he touched you, but he didn't.'" The counselor testified that having a nonsupportive parent can be more detrimental than the actual sexual abuse. According to the counselor, having a nonsupportive parent can cause the victim of sexual abuse to recant or change their account of what happened.

The forensic interviewer who had spoken with Y.M. also testified about her experience with children recanting stories of abuse. The interviewer testified that the child's age, nonsupport of a caregiver, changes in the family, closeness of the relationship with the abuser, and feeling bad about impacting the abuser's life are factors that contribute to children recanting stories of abuse.

In addition to denying the abuse, Y.M. testified that her life changed after she told the police about the abuse because then she "didn't have a dad." Y.M. testified that her mother now has to pay for everything, that she is not able to have as many gifts, and that her mother was "really sad" and "would cry day and night." Y.M. testified that she felt like it was all her fault. According to Y.M., her mother continued talking to Garibo while he was in prison pending trial. Y.M. feels responsible for what has happened to her family. Y.M. also testified that the night before the trial, her mother took her to a relative's house to discuss the case.

Y.M. also testified regarding a letter she had written to the county attorney. In the letter, Y.M. denied the abuse. However, at a later deposition, Y.M. stated, "'I don't really get why I wrote that.'" Y.M. testified that her mother told her to write the letter.

Y.M.'s mother also testified at the trial. She admitted she has maintained contact with Garibo via phone calls and that she talked to him twice the night before the trial started.

Following the State's rest, Garibo moved for a directed verdict. Garibo claimed that the State had not met all the elements beyond a reasonable doubt because "[t]here was testimony by

the victim that there was never any inappropriate touching . . . [and t]here's no corroborating evidence." Garibo's attorney admitted that the State had introduced Garibo's interview with the police into evidence, but claimed that "there needs to be more than just his statement to submit this case to the jury."

In response to Garibo's motion for a directed verdict, the State argued that Y.M.'s medical history from her pediatrician and counselor was sufficient to prove the crime. The State also argued that Garibo's interview with the police corroborated Y.M.'s earlier allegations of sexual assault. The district court denied the motion for a directed verdict.

Garibo's main contention on appeal is that because Y.M. recanted her earlier statement implicating Garibo, the State should have been required to introduce physical evidence corroborating the crime. However, Garibo's argument ignores that the State introduced ample other evidence of Garibo's guilt. In addition to Y.M.'s treatment providers testifying to her earlier statements that Garibo had sexually abused her, the State also introduced Garibo's own confession. Furthermore, the State presented evidence to explain why Y.M. had recanted. Specifically, the State demonstrated that Y.M. had been pressured into recanting because her mother was nonsupportive and because of the negative changes Garibo's arrest had caused in the family.

Accordingly, because there was sufficient evidence by which the jury could have found Garibo guilty of first degree sexual assault of a child, the district court did not err in failing to direct a verdict.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Garibo next argues that he received ineffective assistance of counsel. Garibo argues that he received ineffective assistance because his attorney failed to make certain objections, failed to cross-examine a witness, and failed to communicate with him in a language he understood. We conclude with respect to each claim that either the claim is without merit or that the record on direct appeal is insufficient to determine the merits of the claim.

In order to prevail on a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that he or she was prejudiced by such deficiency. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). The two prongs of the ineffective assistance test, deficient performance and prejudice, may be addressed in either order. *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

Because Garibo has different counsel in this appeal from trial counsel, he must raise any issue of ineffective assistance of trial counsel which is known to him or which is apparent from the record, or the issue will be procedurally barred on postconviction review. *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). The determining factor is whether the record is sufficient to adequately review the question. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

### (a) Failure to Object

Garibo claims that he received ineffective assistance because his trial counsel failed to object to the State asking the police officer who translated Garibo's interview vague, leading,

irrelevant, and speculative questions; failed to object when the State asked Y.M.'s counselor whether Y.M. had ever denied the abuse; and failed to object to the State's use of jail house calls between Garibo and Y.M.'s mother to impeach her testimony. We will address these allegations of ineffectiveness in turn.

### (i) Police Officer's Testimony

Garibo first claims that his counsel was ineffective for failing to object to the police officer's testimony regarding the interview of Garibo and the officer's knowledge of interrogation techniques. We find no merit to this argument.

The police officer testified that he was present for and translated the interview between Garibo and a police detective. The officer also testified that he had been a trained interrogator in the military and that, in his experience, it was common for a suspect to minimize or to initially deny something before finally admitting it. Garibo's attorney did not object to this line of questioning.

We conclude that any objection by Garibo's attorney would not have been sustained because the officer was properly testifying to his opinion as an expert. The police officer testified that he had been trained to perform interrogations. He testified that his knowledge of interrogations came from his training and experience. The police officer's testimony regarding how suspects commonly act during interrogations was therefore admissible as expert testimony. See *State v. Davlin*, 272 Neb. 139, 719 N.W.2d 243 (2006) (stating that expert's opinion is admissible if witness qualifies as expert, has opinion that will assist trier of fact, states his or her opinion, and is prepared to disclose basis of that opinion). We conclude that Garibo's attorney was not ineffective for failing to object to the police officer's testimony regarding interrogations.

### (ii) Counselor's Testimony

Garibo next argues that he received ineffective assistance because his trial counsel failed to object to Y.M.'s counselor's testimony that Y.M. never denied the abuse during their sessions. This assignment of error is meritless.

Y.M.'s counselor testified that she treated Y.M. during four sessions in the spring of 2015. The State asked whether Y.M. ever denied that Garibo had touched her. Over a hearsay objection, the counselor testified that Y.M. had not denied that it happened. Later, the counselor testified over a hearsay objection that Y.M. "was clear that sexual abuse did occur."

Garibo argues that the counselor's statement that Y.M. never denied the abuse assumes facts not in evidence and leads the jury to a conclusion without any foundation. However, the record reveals that the counselor established the foundation for her opinion was her treatment and conversations with Y.M. Furthermore, the counselor later testified that Y.M. affirmatively admitted the abuse. Therefore, any error in admitting the counselor's earlier statement would have been harmless. See, *State v. Juranek*, 287 Neb. 846, 844 N.W.2d 791 (2014) (erroneous admission of evidence is harmless error and does not require reversal if evidence is cumulative and other relevant evidence, properly admitted, supports finding by trier of fact).

### (iii) Jail House Calls

Garibo next argues that he received ineffective assistance because his trial counsel did not object to the use of jail house calls to impeach Y.M.'s mother's testimony and did not request additional time to review the calls. The record is insufficient for us to review this claim on direct appeal.

Y.M.'s mother testified that she had maintained contact with Garibo and that she had spoken to him the night before the trial. She denied that during their conversation Garibo had said, "'I just don't want [Y.M.] to pour the water, spill the water, you know what I mean?'" The State attempted to refresh the mother's recollection by playing a recording of the call for her. The mother listened to the recording outside the presence of the jury. The jail house calls do not appear in the record before us, nor is their content apparent from the record. Accordingly, we conclude that the record is insufficient for us to adequately review this claim.

### (b) Failure to Cross-Examine

Garibo next argues that his counsel was ineffective for failing to cross-examine the counselor more extensively. On cross-examination, Garibo's attorney only asked the counselor whether her session notes had been subpoenaed. The record does not reveal Garibo's counsel's motivation in not asking additional questions and whether it constituted part of the attorney's trial strategy. See *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003) (in determining whether trial counsel's performance was deficient, appellate court affords trial counsel due deference to formulate trial strategy and tactics). Accordingly, we conclude the record is insufficient for us to adequately review this claim on direct appeal.

### (c) Failure to Communicate

Lastly, Garibo claims that he received ineffective assistance because his attorney failed to communicate with him in a language he understood. Garibo argues that due to a language barrier, he was unaware of what was occurring during the trial, he was unable to participate in all the proceedings, and he did not have the opportunity to discuss his right to testify. We conclude the record is insufficient for us to review this claim.

The record reveals that Garibo was afforded a Spanish interpreter during the trial. On at least one occasion, Garibo's attorney utilized the interpreter to discuss a plea offer with Garibo in the hallway. However, the record is devoid of other evidence demonstrating how or if Garibo's attorney communicated with him at other times, and what matters they discussed. Accordingly, we conclude that the record is insufficient for us to adequately review this claim.

### VI. CONCLUSION

We conclude that the record is insufficient for us to review Garibo's claims that his attorney was ineffective for failing to review and object to jail house phone calls, for failing to cross-examine the counselor more extensively, and for failing to adequately communicate with Garibo. We find no merit to Garibo's remaining assignments of error. Accordingly, we affirm Garibo's conviction and sentence.

AFFIRMED.